Judge Nicholas
delivered the Opinion of the Court. — The Chief Justice did not sit in this case.
In August, 1819, George W. Graham sold and conveyed, by absolute deed, to Francis Graham, a house and lot in-South Frankfort, for the sum of fifteen hundred dollars, of which one hundred dollars was paid in hand, and for the balance, Francis Graham executed his notes.
In July, 1820, the deed remaining unrecorded, two executions against George W. Graham, were levied upon the house and lot ; in consequence of which, the Grahams agreed to cancel the contract for the sale and purchase thereof; that Francis Graham should unite in replevin bonds, replevying the executions, and that he should still hold the deed, as an indemnity for his liability on the replevin bonds, and to secure the repayment of the one hundred dollars. He accordingly united in the replevin bonds, and then caused the deed to be re.corded.
In May, 1821, Francis Graham mortgaged the property to the bank of the Commonwealth.
In October, 1825, Samuel obtained judgment .against George W. Graham, and the ji. fa. issused thereon haying been returned no property found, he filed, in October, 1830, his bill against the Grahams and the Bank, to subject the house and lot to the satisfaction thereof, averring the transaction between the Grahams to have been collusive, and for the purpose of defrauding the creditors of George W. Graham.
Francis Graham answered, denying the alleged fraud, and claiming a prior lien for the one hundred dollars; *167 and for the sums paid by him, for George, in discharge of the replevin bonds.
A deed not re ’ corded within the time limited by the statute, is void as to creditors without notice of the conveyance at the time their debts were contracted : — such unrecorded conveyance willnot operate as a mortgage, nor create any lien whatever,'in favor of the grantee, against such cveditors.-Q«e-ry — as to the effect of notice when the debt was contracted.'
It appearing that the debt to the bank had been discharged, the circuit court rendered a decree, ordering the property to he sold in satisfaction of Samuel’s judgment, to the exclusion of Francis Graham’s asserted prior lien.
In the discussion at the bar, a variety of circumstances were relied upon, to shew fraud in fact, or at least a legal presumption of fraud, in the original sale and subsequent arrangement between the Grahams. We do not deem it necessary to express any opinion as to the effect of those circumstances, and therefore shall not state them.
On behalf of Francis Graham, it is contended, that if the transaction be not fraudulent in legal contemplation, the circumstance of the deed not having been recorded in time, and the subsequent change of its character into what was virtually a mere mortgage, will not alone subject the property to the creditors of George W. Graham. To =hew that the failure to record the deed will not have such vitiating effect, we are referred to the following language, used arguendo bv a majority of the court, in the case of Campbell vs. Moseby, Lit. Sel. Ca. 362 — Judge Mills dissenting : — “ The mere failure to prove and record a deed of conveyance, as required by the statute, is not, perse, fraudulent; and if made on a valuable consideration, although not regularly proved and recorded, vests in the grantee a specific equity to have the title perfected, so as to be operative against all the world ; and the holder of such an equity is always preferred, in any contest with the general creditors of the vendor, or subsequent purchasers with notice.”
No authority is cited in support of this dictum, and it will be found on examination, not to have been called for, by the case then before the court. But it is there attempted to be sustained, by supposed analogous English decisions, upon their recording statute, which pronounces certain unrecorded deeds to be void as to subsequent purchasers,with Out any saving as to purchasers with notice; the court of equity there, having determined, *168 that a subsequent purchaser with notice is not within the protection of the statute, and that he should be compelled to relinquish the title to the first purchaser. It would be difficult to reconcile the opinion thus intimated, or the reasoning adduced in its support, with the case of Helm vs. Logan, 4 Bibb, 78, where the point was directly presented for adjudication, and it was expressly de. cided, that neither the creditor himself, or a purchaser under his execution, were affected by notice of an unrecorded deed. It is also there said, that nothing could be more absurd than the recognition of a contrary principle.
But conceding the application, and full force of the analogy suggested in Campbell vs. Moseby, to prove that a creditor with notice, is no further or better protected by our statute, than a subsequent purchaser with notice was by the English recording statute, about which we mean, at this time, to give no positive opinion ; yet the utmost effect that could be deduced from the analogy, would, by no means, sustain the broad terms in which the dictum referred to, is couched, or the application that is attempted to be given to it in this case.
The principle upon which the English decisions on this subject are based, is, that the statute was made for the protection of innocent, bona fide, purchasers without notice; and that, as a subsequent purchaser with notice of an unrecorded deed, is not an innocent, but a mala fide, purchaser, he is not entitled to the protection of the statute. The principle is just in itself, and of undoubted equitable parentage. But it is far from warranting the taking from all creditors indiscriminately, the protection afforded them by the statute against unrecorded deeds, because they may have notice of such deeds at the time they come to enforce their demands, without reference to the time when the debt was contracted. On the contrary, if the principle be of the pure equitable origin, and indubitable justness, that we admit it to be, it must require that the creditor should have had notice, at the time the debt was contracted, when according to the intendment deducible from the whole scope and policy of the statute, *169 lie was liable to be prejudiced by the non-recording of the deed. Notice at any subsequent period, could, with no shew of equity or propriety, he considered so far to affect his conscience as to deprive him of the protection against a secret and unrecorded conveyance, which is extended to him by the very letter of the act. We should make the law “palter” with him, and cheat him with the mere “ word of promise, ” were we to determine, that after having declared all unrecorded deeds should be void as against him, when he came to demand the benefit of this declaration, its whole fruition should be snatched from him, by the production, or notice, of the unrecorded instrument. It would be mere mockery, to hold out the idea of protection to creditors against secret conveyances, and yet when they come to enforce their demands, to permit the secret purchaser to deprive them of protection, by the exhibition of his unrecorded deed.
If we are to follow the opinion intimated in Campbell vs. Moseby, it will only be so far as is warranted by the supposed analogy and principle, upon which that opinion Is based ; and for the reasons urged, we confidently believe, it cannot operate upon a creditor, except where he had notice at the time of contracting the debt. With this restriction, it has no application to this case. For it is not even alleged, that Samuel had such notice at the time the debt to him was incurred. Nor are there any circumstances in the cause, from which to draw such an inference, even if it were proper to inquire into, or weigh them, when the fact is not put in issue by the pleadings. George W. Graham was still in actual occupancy of the property up to the time when Samuel obtained his judgment and execution.
We are, therefore, bqund to pronounce, in the express language of the statute, that the deed to Francis Graham is void, and that it can afford him no lien whatever, as against Samuel’s judgment.
This view of the case supersedes the necessity of expressing any decided opinion upon the effect of the change in the real character of the transaction between *170 the Grahams, in changing the absolute deed into a mortgage, or lien, for indemnity.
A judgment is not void, (tho’ it may be reversible,) for a defect in the mode of entering it.
We should doubt whether Samuel’s judgment was reversible for the defect in the mode of entering judgment, suggested in argument. We entertain no doubt that it is not void.
The decree must be affirmed.