## In re SEWELL.

### (District Court, E. D. Kentucky.)

BANKRUPTCY—VALIDITY OF LIEN—CONDITIONAL SALE UNDER KENTUCKY STATUTE.

According to the settled law of Kentucky, a conditional sale of personal property under a contract by which the seller retains the title until payment of the price is, in effect, an absolute sale, with a mortgage back, and comes within Ky. St. § 496, which provides that no mortgage shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until acknowledged or proved and recorded. As construed by the court of appeals of the state, such section applies, as to creditors, only in favor of those whose debts were subsequently contracted, without notice of the lien, and who have, by legal proceedings or otherwise, acquired some hold or lien upon the property. *Held*, that the lien given by such a conditional contract of sale, unrecorded, was valid, as against a trustee in bankruptcy of the purchaser, where the creditors, although their claims arose subsequent to the sale, were all general creditors, none of whom had acquired any lien upon the property prior to the bankruptcy which would have entitled them to contest such lien.

In Bankruptcy. On question certified by referee.

T. G. Bigstaff, for Cash Register Co.

R. A. Chiles, for trustee.

COCHRAN, District Judge. Upon petition of the National Cash Register Company, the referee has certified to the court for review his decision as to its claim to a lien for unpaid purchase money upon a cash register sold by it to the bankrupt before the institution of these proceedings, and forming a part of his assets, and to have same subjected to the payment thereof in preference to the general creditors. The trustee, on their behalf, resisted the claim, and the referee, by the decision complained of, has disallowed it. It was stipulated in the contract of sale of the register, which was in writing, that the title thereto should remain in the company until fully paid for, and that, in default of payment of any installment of the purchase price, it should be entitled to retake possession thereof, and the payments theretofore made should be considered as paid for its use during the time Sewell had had it in possession. Such a stipulation in a contract of sale of personal property, according to the law of this state, has the effect of passing the title of the property sold back to the seller, as security for the purchase price, and therefore to create a mortgage thereon in his favor therefor. In the case of Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146, Lewis, J., with reference to a contract of sale of personalty containing such a provision, said, "It should therefore be regarded as an absolute sale and mortgage back." And in the case of Welch v. Cash Register Co., 103 Ky. 30, 44 S. W. 124, White, J., as to such a provision in a contract of sale of personalty, said, "That contracts of this kind are only mortgages is equally well settled in this state." This proposition of law is recognized by the referee in his decision. His refusal to enforce the mortgage is based upon two other admitted facts in the case: One is that the contract of sale was never recorded; and the other,

that all the other debts of the bankrupt were created subsequent to the making of that contract, and at a time when Sewell had the title and possession of the register, subject to this unrecorded mortgage. He holds that because of these two facts that mortgage is ineffectual and invalid as against those subsequent creditors, and the proceeds of the register should be distributed ratably amongst all the creditors, and bases his position upon the following statutory provision contained in the Kentucky Statutes, to wit:

"Sec. 496. No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed shall be acknowledged or proved according to law and lodged for record."

In order to determine the applicability of this statute to this case, and whether it necessitates the referee's holding, it is essential to understand the construction which has been placed upon it by the court of appeals of this state. This or a substantially similar provision has been in force in Kentucky from an early date, and quite a number of cases have arisen since then in which that court has been called upon to decide its meaning and applicability in so far as it relates to creditors. The following is a list of such cases, to wit: Helm v. Logan's Heirs, 4 Bibb, 78; Campbell v. Moseby, Litt. Sel. Cas. 358; Graham v. Samuel, 1 Dana, 166; Morton v. Robards, 4 Dana, 258; Righter v. Forrester, 1 Bush, 278; Low v. Blinco, 10 Bush, 331; Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146; Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205. The result to be deduced from them is this: Though in terms the statute refers to creditors generally, it is limited in its application to them. It does not have the effect of invalidating a pocket deed or mortgage as against creditors whose debts were created antecedent to such deed or mortgage. In the early cases there was some oscillation of opinion on this subject, but it is now fixed and settled. The statute has relation solely to creditors whose debts have been created subsequent to the deed or mortgage. And, as to these, it is only such subsequent creditors whose debts were created without notice of the deed or mortgage, and in the belief that the debtors' title to the property was good and unincumbered, that can rely on the statute to invalidate the deed or mortgage. Two limitations have thus been placed upon the general terms of the statute in this particular by judicial construction. Only creditors who are both subsequent to, and without notice of, the deed or mortgage, can claim the benefit of it. In the case of Wicks v. McConnell, the last of the cases cited above, Du Relle, J., thus states the law:

"On the one hand, the unrecorded lien is upheld as against creditors who cannot be presumed to have given credit upon the faith of the property held in lien. On the other hand, creditors who may be presumed on such faith to have given credit are protected, as against the secret lien, in the rights which they secure by their diligence in the levy of their execution or attachment."

The construction thus placed upon so much of the statute as relates to creditors puts them in the same category with the other class of persons to whom it relates, to wit, purchasers. According

to the terms of the statute, they are purchasers for a valuable consideration and without notice, and, of course, subsequent purchasers; and in making this construction the court of appeals is but following the maxim, "Noscitur a sociis." But such are not the only limitations that must be placed upon the very general language of the statute as to creditors. In the very nature of things, it is only subsequent creditors without notice who have in some way got a hold on the property that are in the contemplation of the statute. Without such a hold, they are not in a position to raise an issue with the holder of the unrecorded deed or mortgage. A creditor having nothing more than his claim against the debtor will not and cannot be heard as to the validity of such deed or mortgage. In the extract from the opinion in the case of Wicks v. McConnell, quoted above, the creditors who are said to be entitled to protection against a secret lien are those who have secured rights "by their diligence in the levy of their execution or attachment." In that case the contesting creditor had an attachment lien on the property which was the subject of the litigation. In the case of Graham v. Samuel, supra, he had acquired an equitable lien by a suit in equity to subject the property to the payment of a personal judgment against the debtor upon which an execution had been issued, and returned, "No property found." In all the other cases the creditors had obtained a hold upon the property by the levy of an execution. In the case of Baldwin v. Crow the property had not been sold, and the litigation was between the holder of a secret lien and the sheriff, who had taken the property under the execution. In all the other execution cases the property had been sold under the execution, and the litigation was between the holder of the unrecorded deed or mortgage, on the one hand, and the purchaser, on the other; the purchaser in most of the cases not being the execution creditor, but relying on the rights of such creditor to protect his purchase.

It being essential, then, that the contesting creditor shall have a hold of some sort on the property in order to be in a position to call in the aid of the statute, we are brought up to the question whether creditors who have a hold thereon under and by virtue of a general deed of assignment for benefit of creditors or an assignment in bankruptcy are within the purview of the statute. Antecedent creditors certainly are not, because such creditors are not within the statute at all. Nor are subsequent creditors under such circumstances, because their sole hold upon or right in or to the property is under the assignment which provides that the property passing by it shall be distributed ratably amongst all the creditors, antecedent as well as subsequent. To apply the statute in such a case, therefore, is to let in antecedent creditors, or to do violence to the terms of the assignment, neither of which is allowable. The mere fact that in a particular case all the creditors other than the holder of an unrecorded mortgage are subsequent creditors without notice can make no difference. There is no warrant in the terms of the statute to say that it applies to subsequent creditors without notice, whose rights in the property arise under a general deed of assignment for benefit of

creditors. or an .assignment in bankruptcy, when there are no antecedent.'creditors, and that it does not so apply when there are such creditors.. So the Kentucky court of appeals has never applied the statute to subsequent creditors without notice, whose rights in or hold upon the property arise under such assignments. On the contrary, it has uniformly held that an assignee under a general deed of assignment for the benefit of creditors or in bankruptcy takes and holds the property assigned to him the same as the assignor held it, —subject to any unrecorded deeds, mortgages, or liens which might have been asserted against the property in the hands of the assignor had the assignment not been made. It was so held as to assignees under general deeds of assignment for the benefit of creditors in the following cases, to wit: Zaring v. Cox's Assignee, 78 Ky. 528; Bridgford v. Barbour, 80 Ky. 529; Kentucky Nat. Bank v. Louisville Bagging Co., 98 Ky. 871, 33 S. W. 101; Warehouse Co. v. Combs (Ky.) 58 S. W. 420,—and as to an assignee in bankruptcy in the case of Bank v. Stone, 80 Ky. 109. In none of these cases was the statutory provision in question sought to be applied, except in the case of Warehouse Co. v. Combs; and in answer to this claim, Hobson, J., said, "But the assignee for the benefit of creditors, being neither a purchaser for valuable consideration nor a creditor, is not protected by this statute." In the case of Clift v. Williams (Ky.) 49 S. W. 328, the debtor had died, and in a suit to settle his estate the general creditors of the decedent relied on this statute to defeat an unrecorded lien asserted by the holder thereof as against a portion of the property left by decedent; but the court of appeals of Kentucky decided that the statute had no application. This it did, however, on the ground that the creditors were all antecedent creditors. No implication can be drawn therefrom as to what it would have decided, had there been any subsequent creditors, as to their rights, for such question was not up for decision in that case. That an assignee in bankruptcy takes the property assigned subject to any liens on it that might have been asserted against it in the hands of the assignor, other than such as are avoided by the .bankrupt act itself, has been decided by the supreme court in the case of Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816.

For these reasons, the court feels constrained to disapprove the decision of the referee. An additional consideration adverse thereto is that nowhere in the facts certified is it stated that the creditors of the bankrupt at the time their debts were created had no notice of the National Cash Register Company's unrecorded mortgage. As we have seen, in any event, in order for subsequent creditors to avail themselves of the statute, they must be such creditors without notice, and the burden is on them to show absence of notice. This is not a matter of inference from the fact that they are subsequent creditors, but is a distinct substantive fact of itself, to be alleged and proven.

The decision of the referee is reversed, and the case is remanded for further proceedings before him consistent with this opinion.